UNTIED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

WENTWORTH PRECIOUS METALS, LLC,

Plaintiff

vs.                                        C.A. NO. 11-CV-10909-DPW

CITY OF EVERETT, CARLO DeMARIA,
JR., as he is the Mayor of the City of Everett,
FRANK NUZZO, as he is the Code Enforcement
Officer of the City of Everett, and JOHN FIELD,
as he is the Building Inspector of the City of
Everett,

Defendants

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## LOCAL RULE 56.1 STATEMENT OF FACTS and
## PLAINTIFF'S ADDITIONAL LOCAL RULE 56.1 STATEMENT OF FACTS

In support of its Opposition to Defendants' Motion for Summary Judgment,

Plaintiff submits its Response to Defendants' Local Rule 56.1 Statement of Facts, followed

by Plaintiff's Additional Local Rule 56.1 Statement of Facts.

(References to "Defs.' Ex. ___" are to Exhibits filed by Defendants, and references

to "Pl.'s Ex.___" are to additional Exhibits filed by the Plaintiff herewith).

1

<u>**Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Facts**</u>

**I.      PARTIES**

**Mayor Carlo DeMaria**

1.      Admitted for purposes of summary judgment.

**John Field (Former Building Inspector/Director of Inspectional Services)**

2.      Admitted for purposes of summary judgment that Field held this role until June 6, 2012, but "all relevant times" includes the period to date since Field has left the employ of the City of Everett on June 6, 2012.  (Defendants' Statement of Facts ¶ 8).

3.      Admitted for purposes of summary judgment.

4.      Admitted for purposes of summary judgment.

5.      Admitted for purposes of summary judgment.

6.      Admitted for purposes of summary judgment.

7.      Admitted for purposes of summary judgment.

8.      Admitted for purposes of summary judgment.

9.      Admitted for purposes of summary judgment that this was Field's job description.  However, the statement is incomplete, because Mayor DeMaria had ultimate control and power over how Field "enforced" the City's Zoning Ordinance and State Building Code, power which the Mayor did in fact exercise.  (Plaintiff's Additional Statement of Facts ¶¶ 13-38; see also DeMaria Depo. Tr. (Pl.'s Ex. 4), p. 33, l. 6 – p. 34, l. 12).

**Frank Nuzzo (Director of Code Enforcement)**

10.      Admitted for purposes of summary judgment.

11.      Admitted for purposes of summary judgment.

**Joseph Marchese, Jr./Wentworth Precious Metals, LLC/Scrap-It**

      12.     Admitted for purposes of summary judgment.

      13.     Admitted for purposes of summary judgment. Plaintiff states further that

Scrap-It also operates on the Property pursuant to an Operating Agreement by which Scrap-

It operates under the Wentworth licenses. (Plaintiff's Additional Statement of Facts ¶ 7).

      14.     Admitted for purposes of summary judgment.

## II.    WENTWORTH'S PROPERTY AND THE RELEVANT ZONING

      15.     Admitted for purposes of summary judgment.

      16.     Admitted for purposes of summary judgment.

      17.     Admitted for purposes of summary judgment, but irrelevant, because

Section 27 of the Zoning Ordinance has never been raised in this case nor in any regard by

the City in relation to Wentworth or the Property.

## III.    WENTWORTH'S PERMITTING HISTORY

      18.     Admitted for purposes of summary judgment.

      19.     Admitted for purposes of summary judgment. Plaintiff states further that

the Building Permit allowed construction as set forth therein, but did not require

Wentworth or Marchese to build anything. (Defs.' Ex. 29).

      20.     Denied that the Building Permit constitutes the manifestation of an "intent"

to do anything. It *allowed* the construction of two buildings. (Defs.' Ex. 29).

      21.     Denied. The only restrictions on the Junk, Recovery & Recycling Facility

License issued to Wentworth in 2010 and 2011 are: "1) Employee parking provided; 2)

Landscaping around property, and 3) Consider hiring Everett residents." (Plaintiff's

Additional Statement of Facts ¶ 12).

22.     Admitted for purposes of summary judgment, to the extent there was "storage," if any.  Plaintiff states further that the only restrictions on the Junk, Recovery & Recycling Facility License issued to Wentworth in 2010 and 2011 are: "1) Employee parking provided; 2) Landscaping around property, and 3) Consider hiring Everett residents." (Plaintiff's Additional Statement of Facts ¶ 12).  Plaintiff states further that the Everett Board of Aldermen is the license-granting authority in the City of Everett, not any of the Defendants in this case. (Plaintiff's Additional Statement of Facts ¶ 10).

23.     Admitted for purposes of summary judgment that the Defendants have accurately quoted the document referred to in this paragraph.  Plaintiff states further that the only restrictions on the Junk, Recovery & Recycling Facility License issued to Wentworth in 2010 and 2011 are: "1) Employee parking provided; 2) Landscaping around property, and 3) Consider hiring Everett residents." (Plaintiff's Additional Statement of Facts ¶ 12).  Plaintiff states further that the Everett Board of Aldermen is the license-granting authority in the City of Everett, not any of the Defendants in this case. (Plaintiff's Additional Statement of Facts ¶ 10).

24.     Admitted for purposes of summary judgment, to the extent that there is "storage" of precious metals, such as gold and platinum, at the Property.  Plaintiff states further that to date there has been no need for a second building to accommodate storage of precious metals. (Plaintiff's Additional Statement of Facts ¶ 6).

25.     Admitted for purposes of summary judgment that Desmond believed that any "storage" must be "in containers within a building" as described in this paragraph. Plaintiff states further that all storage at the Property takes place inside a building.

4

(Plaintiff's Additional Statement of Facts ¶¶ 6,19). Plaintiff states further that Desmond's statements constitute conclusions of law not statements of fact.

26.     Admitted for purposes of summary judgment that Defendants have accurately quoted the letter referred to in this paragraph. Plaintiff states further that all storage at the Property takes place inside a building. (Plaintiff's Additional Statement of Facts ¶¶ 6,19). Plaintiff states further that statements about bathrooms and employee locations are entirely irrelevant to this case, and are intended merely to distract from the real issues.

27.     Admitted for purposes of summary judgment that Defendants have accurately quoted the documents referred to in this paragraph. Plaintiff states further that Defendants have never alleged that the structure located on the Property does not comply with the Planning Board's Decision. Plaintiff states further that to date there has been no need for a second building, nor does the Planning Board's Decision require same, and deny the implication in this paragraph otherwise. (Plaintiff's Additional Statement of Facts ¶¶ 6, 19). To the contrary, on its face the Decision allows it, subject to certain conditions. (Defs' Ex. 15). Plaintiff states further that the statements in this paragraph are entirely irrelevant to this case, and are intended merely to distract from the real issues.

28.     Admitted for purposes of summary judgment, but irrelevant, because Section 27 of the Zoning Ordinance has never been raised in this case nor in any regard by the City in relation to Wentworth or the Property.

## IV. THE SCRAP-IT OPERATION AT THE PROPERTY

29.    Denied that Minichiello Brothers operates a "scrap metal plant" on the Property. Admitted for purposes of summary judgment that Scrap-It operates a metal recycling facility on the Property. (Plaintiff's Additional Statement of Facts ¶¶ 5,6).

30.    Admitted for purposes of summary judgment.

31.    Admitted for purposes of summary judgment.

32.    Admitted for purposes of summary judgment.

33.    Admitted for purposes of summary judgment.

34.    The allegations in the last sentence of this paragraph are denied, because the sentence inaccurately cites the deposition transcript of Minichiello, in that the word "retail" is never used. Plaintiff states further that said allegation is a conclusion of law not a statement of fact. The remaining allegations this paragraph are admitted for purposes of summary judgment.

35.    Admitted for purposes of summary judgment.

36.    Denied. Material is weighed when it first comes into the Property. (Plaintiff's Additional Statement of Facts ¶ 6).

37.    Admitted for purposes of summary judgment.

38.    Denied. The height of the material-in-process in the bins varies greatly from day-to-day and hour-to-hour. (Plaintiff's Additional Statement of Facts ¶ 6).

39.    Denied that this paragraph represents a complete and accurate characterization of the existence of material-in-process at the Property, as it varies greatly from day-to-day and hour-to-hour. (Plaintiff's Additional Statement of Facts ¶ 6).

40.    Admitted for purposes of summary judgment.

41. Admitted for purposes of summary judgment that at times one sees various material-in-process in piles on the ground at the Property.

42. Admitted for purposes of summary judgment that sometimes the piles of material-in-process can exceed 30 feet in height.

43. The allegations in the first sentence of this paragraph are admitted for purposes of summary judgment. Denied that Field took "enforcement action" in the form of a Cease and Desist Order prior to the filing of this action. (Defs.' Ex. 23; see ¶ 56, *infra*).

## V.   ENFORCEMENT ACTIVITY INVOLVING WENTWORTH BY JOHN FIELD

44. Admitted for purposes of summary judgment that Field may have received such a complaint, but the implication that his conduct thereafter was based on same is denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

45. Admitted for purposes of summary judgment.

46. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

47. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

48. Admitted for purposes of summary judgment that the Property at times appears as represented in this paragraph.

49. Admitted for purposes of summary judgment.

50. This paragraph constitutes conclusions of law and not statements of fact. Furthermore, the allegations are denied. (Plaintiff's Additional Statement of Facts ¶ 12).

51. Admitted for purposes of summary judgment that Field met with Marchese and Minichiello in early 2010. (Plaintiff's Additional Statement of Facts ¶ 20).

52. Denied. The meeting referred to in this paragraph was a general meeting to discuss the alleged issues at the Property. (Plaintiff's Additional Statement of Facts ¶ 20).

53. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

54. Denied that an "enforcement letter" was issued on August 26, 2010. (See Defs.' Ex. 23, as cited, dated August 30, 2010, and discussed in ¶ 56, *infra*). Admitted for purposes of summary judgment that Field went to the Property on August 26, 2010.

55. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

56. Denied that the August 30, 2010 letter referred to in the paragraph is "an enforcement order for the Property." On its face, it is a letter threatening the "possibility" of enforcement actions. (Defs.' Ex. 23). Admitted for purposes of summary judgment that Field sent the August 30, 2010 letter. Plaintiff states further that the allegation in the second sentence of this paragraph constitutes a conclusion of law and not a statement of fact, and also is irrelevant to this case.

57. Admitted that Field sent a letter to Marchese dated October 19, 2010, and that Defendants have accurately described it. (Defs.' Ex. 24). Otherwise, the allegations in this paragraph constitute conclusions of law and not statements of fact, and are denied.

58. Admitted for purposes of summary judgment that Field sent the October 19, 2010 letter referred to in this paragraph. Otherwise, denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38). Plaintiff states further that the allegations in this paragraph constitute conclusions of law and not statements of fact.

59. Admitted for purposes of summary judgment. Plaintiff states further that Field and the Building Department subsequently endorsed licensing for all other licensed

ILD scrap metal recyclers despite the October 19, 2010 letter, but did not do so for Wentworth. (Plaintiff's Additional Statement of Facts ¶¶ 28-31, 37).

60. Admitted for purposes of summary judgment. Plaintiff states further that despite this, Field attempted to block Wentworth's license renewals based on the "heavy manufacturing" allegation. (Plaintiff's Additional Statement of Facts ¶ 28).

61. Denied. Plaintiff states further that the stay was at the direction of the Mayor due to a desire to ensure that the principals of the scrap metal recyclers other than Wentworth continued to contribute to the Mayor's campaign fund, and to force Wentworth/Marchese to do so, the October 19, 2010 letter thus acting as a threat of adverse action if they did not. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

62. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

63. Admitted for purposes of summary judgment.

64. Admitted for purposes of summary judgment.

65. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

66. Admitted for purposes of summary judgment that at times the Property may have appeared as Field describes.

67. This paragraph constitutes conclusions of law and not statements of fact, and is irrelevant, because Section 27 of the Zoning Ordinance has never been raised in this case nor in any regard by the City in relation to Wentworth or the Property.

68. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

69. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

70. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

71. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

72. Admitted that Marchese does not believe that Field has any animus toward him – Field's actions were directed by the Mayor's animus, retaliation, and attempts at extortion. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

73. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

74. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

75. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

## VI. OTHER PROPERTIES IN THE INDUSTRIAL LIMITED DISTRICT

76. Admitted for purposes of summary judgment.

### A. M&S Metals

77. Admitted for purposes of summary judgment.

78. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 30-33, 37). Furthermore, the allegations in the paragraph constitute conclusions of law not statements of fact.

79. Admitted for purposes of summary judgment.

80. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

81. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

82. Denied. (Plaintiff's Additional Statement of Facts ¶ 32).

83. The allegations in this paragraph constitute conclusions of law and not statements of fact, and are denied.

84. Admitted for purposes of summary judgment.

85. Admitted for purposes of summary judgment, but irrelevant.

### B. American Scrap Metal

86. Admitted for purposes of summary judgment.

87.     Admitted for purposes of summary judgment.

88.     Plaintiff cannot state what Field may or may not have observed. Plaintiff states that at times there are piles of metal outside at American Scrap Metal. (Plaintiff's Additional Statement of Facts ¶ 32).

89.     Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

90.     The allegations in the first and last clauses of this paragraph are admitted for purposes of summary judgment, but are irrelevant. The allegations in the second clause is a conclusion of law and not a statement of fact, and are denied; and Plaintiff states that at times there are piles of metal outside at American Scrap Metal. (Plaintiff's Additional Statement of Facts ¶ 32).

### C.     **HH&M Metals**

91.     Admitted for purposes of summary judgment.

92.     Admitted for purposes of summary judgment.

93.     Plaintiff cannot state what Field may or may not have observed. Plaintiff states further that at times there are piles of metal outside at HH&M Metals. (Plaintiff's Additional Statement of Facts ¶ 32).

94.     The allegations in this paragraph constitute conclusions of law and not statements of fact, and are denied.

95.     Admitted for purposes of summary judgment, but irrelevant.

### D.     **Mattuchio Metals, Inc.**

96.     Admitted for purposes of summary judgment.

97.     Plaintiff cannot state what Field may or may not have observed. Plaintiff states that at times there are piles of metal outside at Mattuchio Metals, Inc. (Plaintiff's Additional Statement of Facts ¶ 32).

98.     Admitted for purposes of summary judgment.

99.     Admitted for purposes of summary judgment that the letter referred to in this paragraph was sent.

100.    Denied. The allegations in this paragraph are based on inadmissible hearsay, and furthermore constitute conclusions of law and not statements of fact, and are denied.

101.    Denied. Plaintiff states that at times there are piles of metal outside at Mattuchio Metals, Inc. (Plaintiff's Additional Statement of Facts ¶ 13-38).

102.    Plaintiff cannot state what Field may or may not have observed. Plaintiff states that at times there are piles of metal outside at Mattuchio Metals, Inc. (Plaintiff's Additional Statement of Facts ¶ 32).

103.    Plaintiff cannot state what Field may or may not have observed. Plaintiff states that at times there are piles of metal outside at Mattuchio Metals, Inc. (Plaintiff's Additional Statement of Facts ¶ 32).

104.    Admitted for purposes of summary judgment, but irrelevant.

**E.      Woodwaste**

105.    Admitted for purposes of summary judgment.

106.    Admitted for purposes of summary judgment.

107.    Admitted for purposes of summary judgment.

108.    Admitted for purposes of summary judgment.

F. **Scrap Metal Operators in the Industrial District Not the Industrial Limited District**

109.   Admitted for purposes of summary judgment.

110.   Admitted for purposes of summary judgment.

111.   Admitted for purposes of summary judgment, but irrelevant.

## VII.   THE MAYOR'S POLITICAL CAMPAIGN

112.   Admitted for purposes of summary judgment that all "campaign contributions," as such, are listed on Campaign Finance Reports.

113.   Admitted for purposes of summary judgment. See also Plaintiff's Statement of Facts, ¶ 17.

114.   Admitted for purposes of summary judgment, but irrelevant.

115.   Admitted for purposes of summary judgment, but irrelevant.

116.   Admitted for purposes of summary judgment, but irrelevant.

117.   Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

118.   Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

## VIII.   NO ALLEGATION OF DAMAGE

119.   Admitted.

120.   Admitted for purposes of summary judgment, but irrelevant.

121.   Denied. (Plaintiff's Statement of Material Facts, ¶ 7).

122.   Denied that Field has sent more than one "enforcement order." (Defs.' Exs. 19, 21, 36). Field's July 26, 2011 Order is under appeal before the Middlesex Superior Court.

123.   Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38).

124. Denied. (Plaintiff's Additional Statement of Facts ¶¶ 13-38 and ¶¶ 39-40).

125. Admitted for purposes of summary judgment, but irrelevant. (See also Plaintiff's Additional Statement of Facts ¶¶ 13-38 and ¶¶ 39-40).

## **Plaintiff's Additional Local Rule 56.1 Statement of Facts**

1. Joseph Marchese is the principal and sole manager of Plaintiff Wentworth Precious Metals, LLC ("Wentworth"). (Marchese Aff. (Pl.'s Ex. 1), ¶ 4).

2. Marchese is the principal and sole manager of Carlyle Precious Metals, LLC ("Carlyle"). (Marchese Aff. (Pl.'s Ex. 1), ¶ 4).

3. Both Wentworth and Carlyle are duly licensed by the City of Everett as scrap metal recyclers. (Marchese Aff. (Pl.'s Ex. 1), ¶ 4).

4. Marchese also owns and controls three entities which own land in Everett on which the scrap metal recycling facilities operate pursuant to the Wentworth and Carlyle licenses: a parcel on Dexter Street, and two separately-addressed but adjacent parcels on Second Street (the "Second Street Property"). The two entitles that own the Second Street Property are called Zero Terminal Street, LLC and Marchese Realty, LLC. (Marchese Aff. (Pl.'s Ex. 1), ¶ 5).

5. Minichiello Brothers, Inc., which does business under the name "Scrap-It," operates the metal recycling facilities on the properties. Marchese is not involved with the operation of Scrap-It. (Marchese Aff. (Pl.'s Ex. 1), ¶ 6; Minichiello Aff. (Pl.'s Ex. 2), ¶ 1).

6. The nature of Scrap-It's business is as follows: Junk metal is brought to the property. It is checked to determine what type of material it is, and then weighed and purchased. Given the high volume, the metal is unloaded onto the ground, separated by

large concrete walls into bins. At that point it becomes material in-process. Almost immediately, the in-process material begins to be sorted and further separated. Most of the material is then baled and readied to be shipped for delivery to purchasers. Other more valuable material, such as gold and platinum, which are bought in much smaller amounts, is placed in a vault inside the building on the Property. (To date, all the storage of precious metals at the Second Street Property have been sufficiently located in the existing building). Given the high volume of metal that comes in, at most times there are piles of in-process material in the bins. However, a particular item of metal is normally processed and back off of the property to be sold within hours, rarely as long as one full day. As such, the piles of metal are constantly being processed and turned-over. (Minichiello Aff. (Pl.'s Ex. 2), ¶ 4); Minichiello Depo. Tr. (Pl.'s Ex. 7), p. 121, l. 15 – 122, l. 2; Marchese Depo. Tr. (Pl.'s Ex. 6), p. 89, ll. 7-10).

7.     Particularly for the Second Street Property, Scrap-It operates on the property pursuant to both a lease for the land and an Operating Agreement with Wentworth, pursuant to which Scrap-It operates under the Wentworth licenses. (Marchese Aff. (Pl.'s Ex. 1), ¶ 7; Minichiello Aff. (Pl.'s Ex. 2), ¶ 2).

8.     Frank Minichiello ("Minichiello") owns and is responsible for the day-to-day operations of the Scrap-It facility on the Second Street Property. (Minichiello Aff. (Pl.'s Ex. 2), ¶ 1).

9.     Marchese also owns property at 163 Ferry Street, Everett, MA, on which Supreme Cars, Inc., a duly licensed used auto sales business, has been located since 1978. (Marchese Aff. (Pl.'s Ex. 1), ¶ 8).

10. For all of the various licenses, every year the City Clerk for the City of Everett forwards license renewal documents to be completed and returned for presentment to the Licensing Committee of the Board of Aldermen for the City of Everett. Contained within the renewal packet are: 1) Treasurer's Certificate indicating all taxes paid, 2) Fire Department Inspection report that location is in compliance, and 3) Building Department Certificate of Zoning Compliance. The Supreme Cars location has been approved by all three departments referenced above, including the Building Department for zoning compliance, from 1978 to 2010. Carlyle was likewise approved from 2005 to 2011; and Wentworth from 2008 to 2010. For all three, upon completion of all documents, Marchese forwarded the same to the City Clerk for approval before the Board of Aldermen Licensing Committee. This procedure was followed each and every year as set forth above without objection from any source. (Marchese Aff. (Pl.'s Ex. 1), ¶ 9; Pl.'s Ex. 9).

11. There had never been any adverse licensing reports or objections based on zoning until mid-2010, after Building Inspector John Field was appointed by Mayor DeMaria. Indeed, every year prior to Building Inspector Field being appointed, the Building Department signed-off on the Wentworth and Carlyle licenses. Field was the first Building Inspector appointed by Mayor DeMaria's administration. (Marchese Aff. (Pl.'s Ex. 1), ¶ 11).

12. The only restrictions on the Junk, Recovery & Recycling Facility License issued to Wentworth in 2010 and 2011 are: "1) Employee parking provided; 2) Landscaping around property, and 3) Consider hiring Everett residents." (Marchese Aff. (Pl.'s Ex. 1), ¶ 10; Pl.'s Ex. 3).

16

13.     In 2007, Joseph McGonagle decided to run for Mayor of the City of Everett. He asked Marchese to help him with the campaign and offer his public support. Months later, DeMaria also decided to run for Mayor for the first time, and also sought Marchese's help and public endorsement, as well as that of Marchese's brother Alderman Michael Marchese. Marchese indicated to DeMaria that he was committed to Mr. McGonagle and would continue to support and endorse him. DeMaria was very upset that Marchese declined to support his candidacy for Mayor. (Marchese Aff. (Pl.'s Ex. 1), ¶ 12; DeMaria Depo. Tr. (Pl.'s Ex. 4), pp. 125-130 ).

14.     In October or November 2009, Marchese received a phone call from Gus Serra of Revere, MA, inviting him to a private fundraising event for Mayor DeMaria. He indicated to Marchese that it would be a good time to renew his friendship with the Mayor. Marchese inquired why he would say that, and Serra indicated that animosity existed between Marchese and the Mayor. Marchese responded that he would not attend nor provide any money to the Mayor. The fundraising event Mr. Serra referred to was ultimately held at the Winthrop Arms, Winthrop, MA. (Marchese Aff. (Pl.'s Ex. 1), ¶ 13; DeMaria Depo. Tr. (Pl.'s Ex. 4), pp. 221-228; p. 263, ll. 15-20; Marchese Depo. Tr. (Pl.'s Ex. 6), p. 190, ll. 2-13).

15.     Mr. Serra represents Capitol Waste Services, Inc. ("Capitol Waste"). In January 2010, while in Florida, Mr. Serra stated to Marchese that the event sponsored by him and the owners of Capitol Waste raised about $30,000.00 for Mayor DeMaria. After the fundraising event, Mayor DeMaria extended the Capitol Waste contract for an additional five years, at approximately $8 million, on a "no bid" basis. Mr. Serra also indicated to Marchese that prior to Mayor DeMaria signing the five year no-bid extension,

Mayor DeMaria approached the principals of Capitol Waste for an additional $50,000.00 before he would sign. Mr. Serra told Marchese that he met with the Mayor and resolved the issue, and that the Mayor then signed the five year extension, on February 4, 2010, a month later. (Pl.'s Ex. 5; Marchese Aff. (Pl.'s Ex. 1), ¶ 14; DeMaria Depo. Tr. (Pl.'s Ex. 4), pp. 219-233).

16.     During the 2008-2010 timeframe Marchese received a number of solicitations for events to raise money for the Mayor but declined to attend. (Marchese Aff. (Pl.'s Ex. 1), ¶ 15).

17.     Marchese did contribute to Mayor DeMaria's campaign fund on one occasion, in 2008. But this was only as a personal favor to the person who was running the fundraising event. Marchese's attendance was in no way meant to be a change in his position toward the Mayor, and the Mayor was well aware of this. After this, Marchese refused to contribute any more money to the Mayor. (Marchese Aff. (Pl.'s Ex. 1), ¶ 16; Marchese Depo. Tr. (Pl.'s Ex. 6), pp. 178-180; DeMaria Depo. Tr. (Pl.'s Ex. 4), p 118, l. 23 – p. 119, l. 12; p. 136, l. 23 – p. 137, l. 20).

18.     Although there had never been any zoning or other issues with the City before, in August 2010, shortly after being hired, Building Inspector Field began appearing at the Wentworth facility and would on several occasions threaten to close the facility. (Marchese Aff. (Pl.'s Ex. 1), ¶ 17).

19.     On August 30, 2010, Field sent a letter to Marchese alleging that the material-in-process constituted unlawful outside "storage" taking place at the Second Street Property. The outside material-in-process had existed at the Second Street Property prior to August 30, 2010, from the time the operation started, but no such position had ever been

taken by the City before, and the Building Department had confirmed zoning compliance just five months prior. (Defs.' Ex. 23; Pl.'s Ex. 9; Marchese Aff. (Pl.'s Ex. 1), ¶ 17; Minichiello Aff. (Pl.'s Ex. 2), ¶ 5; Minichiello Depo. Tr. (Pl.'s Ex. 7), pp. 69-71, 94).

20.    In early 2010, Marchese and Minichiello attended a meeting with Mayor DeMaria and Building Inspector Field to discuss the Second Street Property generally, but there was no real interest on their part in coming to some consensus. (Marchese Aff. (Pl.'s Ex. 1), ¶ 18; Minichiello Aff. (Pl.'s Ex. 2), ¶ 6).

21.    On October 19, 2010, Building Inspector Field issued a letter to Marchese alleging that there was "heavy manufacturing" taking place on the Second Street Property. (Defs.' Ex. 24; Marchese Aff. (Pl.'s Ex. 1), ¶ 19).

22.    In November 2010, Building Inspector Field took Marchese to Malden District Court on numerous citations. The clerk inquired about the other five similar metal recycling facilities, "Why are they not here?" Field indicated he was "doing them one at a time." The matter was continued. (Marchese Aff. (Pl.'s Ex. 1), ¶ 20).

23.    In December 2010, Marchese filed to renew the second-hand auto license for the Ferry Street property referred to in paragraph 9, *supra*. At the hearing, Marchese was met with opposition from Building Inspector Field. After the license renewal hearing, Mayor DeMaria approached Marchese in City Hall, and said to him, "It looks like you're having a hard time tonight," and then he laughed. Mayor DeMaria then said to Marchese that, "Your problem is you should get on board" and "start to attend my fundraising events" and that if Marchese did so "everything goes away." (Marchese Aff. (Pl.'s Ex. 1), ¶ 21; Marchese Depo. Tr. (Pl.'s Ex. 6), p. 182, l. 11 – p. 183, l. 8; p. 186, l. 18 – p. 190, l. 1).

24. Mayor DeMaria was attempting to extort money from Marchese by his statements described in paragraph 23, *supra*. Id.

25. The "everything" referred to by Mayor DeMaria in paragraph 23, *supra*, meant all the problems Marchese was having with the City, and that the Mayor would see to it that Marchese had no more zoning or other problems with the City if Marchese did as the Mayor asked -- and that Marchese would continue to have problems with the City if Marchese refused. Marchese believed that the Mayor had the power to do so. Id.

26. In November or December 2010, Minichiello attended another meeting at City Hall. This time only the Mayor and Field were present, and one other female employee of the City. Marchese was not there. (Minichiello Aff. (Pl.'s Ex. 2), ¶ 7; Minichiello Depo. Tr. (Pl.'s Ex. 7), pp. 105-109; Field Depo. Tr. (Pl's Ex. 8), p. 99).

27. During the meeting referred to in paragraph 26, *supra*, after briefly discussing the Second Street Property, the Mayor screamed at Minichiello, "The problem is that fucking Joe Marchese! You tell Joe Marchese to go fuck himself!" The Mayor asked Minichiello to "deliver that message" to Marchese, saying to Minichiello, "Fuck him. You tell him for me." Minichiello replied that he didn't feel comfortable doing that, and left the room. Then, outside in the hallway, Minichiello asked Field what was going on. Field said to Minichiello that, "Marchese's got to go. That's the problem." Minichiello understood Field to be saying that they had some issue with Marchese, and nothing was going to get resolved with the Second Street Property until Marchese "went." Id.

28. In March 2011, Building Inspector Field opposed the granting of the Wentworth licenses and attempted to block their renewal before the Board of Aldermen, again claiming disallowed "outside storage," and that the business was "heavy

manufacturing" that required a special permit. After a hearing before the Licensing Committee, the licenses were granted due to Field's lack of any reasonable basis to block the licenses. (Pl.'s Ex. 10; Marchese Aff. (Pl.'s Ex. 1), ¶ 22; Field Depo. Tr. (Pl's Ex. 8), pp. 125, 132-133, 150-151).

29.    In 2011, the following licenses where renewed without objection from Building Inspector Field or the Building Department: 1) HH&M Metals, Inc., 2) M&S Metals, Inc., 3) American Scrap Metal, and 4) Paul Mattuchio, Inc. (collectively, "the Other ILD Metal Recyclers"). (Marchese Aff. (Pl.'s Ex. 1), ¶ 23; Field Depo. Tr. (Pl's Ex. 8), pp. 137-141, 150-151, 165-166).

30.    All of the Other ILD Metal Recyclers  are within the Industrial Limited District and have the same business model as the operation on the Wentworth/Second Street Property. (Marchese Aff. (Pl.'s Ex. 1), ¶ 23; DeMaria Depo. Tr. (Pl.'s Ex. 4), p. 78, l. 14 – p. 79, l. 5; p. 83, l. 22 – p. 84, l. 5; Field Depo. Tr. (Pl's Ex. 8), pp. 111-112, 137-138, 149-150).

31.    On October 19, 2010, Field had sent out letters to all of the Other ILD Metal Recyclers alleging that they were "heavy manufacturing" and needed a special permit. But, unlike Wentworth, Field and the Building Department did not oppose their license renewals in 2011 on the "heavy manufacturing" grounds. (Marchese Aff. (Pl.'s Ex. 1), ¶ 23; Field Depo. Tr. (Pl's Ex. 8), pp. 52, 114-116, 119-125, 137-141, 150-151, 165-166; Pl.'s Ex. 10; Def.'s Ex. 24).

32.    There are at times piles of metal outside at all of the Other ILD Metal Recyclers. (Marchese Aff. (Pl.'s Ex. 1), ¶ 23; Field Depo. Tr. (Pl's Ex. 8), pp. 155-156, 159-160, 179-183).

33. Field does not claim that he investigated when metal was first piled outside at M&S Metals and HH&M Metals, only that he investigated when these businesses were first licensed. (Field Depo. Tr. (Pl's Ex. 8), pp. 142-145).

34. Field has never taken the position before the Board of Aldermen relative to licensing that there is disallowed "outside storage" at any of the Other ILD Metal Recyclers, nor has he taken any action against them. (Marchese Aff. (Pl.'s Ex. 1), ¶ 23; Field Depo. Tr. (Pl's Ex. 8), pp. 155-156, 159-160, 179-183).

35. In May 2011, Marchese was at Everett City Hall to pay for and pick up his license renewals at the City Clerk's Office. As Marchese was leaving the office, Mayor DeMaria was in the corridor. The Mayor approached Marchese and said to him that he (the Mayor) has the power to "make everything go away," and that Marchese "doesn't know the name of the game." The Mayor also stated to Marchese that he could easily take Marchese's real estate by eminent domain. Marchese left City Hall feeling threatened by the Mayor's statements. (Marchese Aff. (Pl.'s Ex. 1), ¶ 24; Marchese Depo. Tr. (Pl.'s Ex. 6), p. 188, l. 10 – p. 190, l. 1).

36. On July 26, 2011, Building Inspector Field sent a Cease and Desist Order to Marchese, claiming that there was "outside storage" on the part of the Second Street Property owned by Marchese Realty, LLC. (Defs.' Ex. 25; Marchese Aff. (Pl.'s Ex. 1), ¶ 25).

37. Mayor DeMaria has received thousands of dollars in campaign contributions from the owners and their families of the Other ILD Metal Recyclers, all of whom regularly contribute to his campaign fund. (Marchese Aff. (Pl.'s Ex. 1), ¶¶ 26-27; DeMaria Depo. Tr. (Pl.'s Ex. 4), pp. 210-215).

38.     Mayor DeMaria has received thousands of dollars in campaign contributions from other companies whose contacts were not put out to bid, and from individuals who have done business with the City.  (Marchese Aff. (Pl.'s Ex. 1), ¶¶ 26-27; DeMaria Depo. Tr. (Pl.'s Ex. 4), pp. 154, 164, 177-178, 237-241).

39.     Beginning in 2010, a company called Metal Management became interested in potentially buying the Second Street land and operations, at a considerable profit. However, the company ceased negotiations based on Marchese's problems with the City. (Marchese Aff. (Pl.'s Ex. 1), ¶ 30).

40.     Minichiello and his family have been in the metal recycling business for many years, and based on his experience he believes it is absolutely necessary for the viability of the business for material in-process to be handled as it is now handled at the Second Street Property.  (Minichiello Aff. (Pl.'s Ex. 2), ¶ 8).

Plaintiff
Wentworth Precious Metals, LLC

/s/ Justin Perrotta
_____
Justin Perrotta (BBO # 641828)
Law Offices of William V. Hovey
27 School Street, Fifth Floor
Boston, MA 02108
617-443-0123
617-443-0122 (fax)
jmp@hoveylaw.net

Dated: August 14, 2012

## Certificate of Service

I, Justin Perrotta, certify that the above document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system upon notification by the Court of those individuals who will not be served electronically. /s/ Justin Perrotta

Dated: August 14, 2012